UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CLARENCE JOHNSON,  CIVIL NO. 04-4684 (DWF/JSM),

   Plaintiff,

v.  REPORT AND RECOMMENDATION

UNIVERSITY GOOD SAMARITAN
CENTER and AFSCME COUNCIL
NO. 14,

   Defendants.

The above matter came before the undersigned United States Magistrate Judge upon defendant AFSCME Council No. 14's Motion to Dismiss Complaint [Docket No. 10] and defendant University Good Samaritan Center's Motion to Dismiss or, in the Alternative, for Summary Judgment [Docket No. 18].

Both motions have been considered and decided by the Court on the written submissions, without oral argument.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.1(c). For the reasons discussed below, **IT IS RECOMMENDED THAT**:

   1. Defendant AFSCME Council No. 14's Motion to Dismiss Complaint [Docket No. 10] be **GRANTED**.

   2. Defendant University Good Samaritan Center's Motion to Dismiss or, in the Alternative, for Summary Judgment [Docket No. 18] be **GRANTED**.

    3.    Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.[1]

## FACTUAL BACKGROUND

Plaintiff Clarence Johnson ("Johnson") filed similar suits against defendant University Good Samaritan Center ("Good Samaritan") on October 29, 2004, and against defendant AFSCME Council No. 14 ("AFSCME") on November 1, 2004. In an Order dated November 24, 2004, both cases were consolidated by the Court pursuant to the provisions of Rule 42(a). [Docket No. 7].

Johnson was employed at Good Samaritan as a Nursing Assistant from November 22, 1999 to September 11, 2003, when he was terminated for an incident of "No Call/No Show" after he had been given a written warning on December 24, 2002 and a final warning on January 7, 2003. Jerstad Aff. ¶ 3.

Johnson was represented by AFSCME and his employment was governed by a collective bargaining agreement ("CBA") executed by Good Samaritan and AFSCME, effective July 1, 2001 through June 30, 2004.

The CBA states the following in regard to termination:

> The Union may file a written grievance relating to [a] discharge or discipline. Such grievance must be received by the Employer within seven (7) calendar days of receipt by the Union of the notice of discharge.

Duchscherer Aff., Ex. A.

---

[1] On June 17, 2005, plaintiff filed a "Motion, Motion to Dismiss, Memorandum of Law, in Support of Motion plus Settlement Demand/Mediation." [Docket No. 30]. It is not clear from this pleading whether plaintiff is seeking any relief from this Court or is further responding to defendants' motions. However, based on this Court's recommendations to dsmiss his suits against both defendants in their entirety, it is recommended that his motion be **DENIED**.

On September 25, 2003, fourteen days after his termination, AFSCME received a letter from Johnson in which Johnson asked the union to investigate his termination. Duchscherer Aff., Ex. D.

On September 30, 2003, Linda Jackson, Business Representative with AFSCME, sent Johnson a letter informing him that AFSCME could not offer him assistance because he was no longer represented by the Union. Duchscherer Aff., Ex. E.

Johnson filed a Charge of Discrimination against AFSCME with the Minnesota Human Rights Department ("MHRD") on December 3, 2003, and with the Equal Employment Opportunity Commission ("EEOC") on December 8, 2003 ("AFSCME Charge"). Duchscherer Aff., Exs. F, G. In the AFSCME Charge, Johnson alleged race discrimination and that he was subjected to different terms and conditions of employment due to his disability. Duchscherer Aff., Ex. F; Cefalu Aff., Ex. F. On February 6, 2004, the EEOC dismissed Johnson's Charge of Discrimination against AFSCME and informed him he had 90 days from receipt of the Notice to bring a suit against AFSCME. On April 29, 2004, the MHRD adopted the EEOC's findings and issued a Notice of Dismissal of the AFSCME charge and notified Johnson that he had 45 days from receipt of its decision to commence a suit against AFSCME.[2] Duchscherer Aff., Exs. H, I.

During his employment at Good Samaritan, Johnson filed two administrative charges of employment discrimination. On January 27, 2003, Johnson filed an administrative charge of discrimination against Good Samaritan with the MHRD and the

---

[2] Pursuant to the MHRA, receipt of notice is presumed to be five days from the date of service by mail of the written notice. Minn. Stat. § 363A.33, Subd. 1

Johnson R&R.doc

EEOC claiming racial discrimination ("First Good Samaritan Charge").  Jerstad Aff., Ex. A.  On April 3, 2003, the MHRD dismissed the First Good Samaritan Charge and informed Johnson that he had 45 days from receipt of its decision to bring a civil action based on the charge or that right would be foreclosed; on June 3, 2003, the EEOC dismissed this charge and issued a Dismissal and Notice of Suit Right which notified Johnson that he had 90 days from receipt of the Notice to file a lawsuit based on the charge.  Jerstad Aff., Exs. B-C.  In an undated letter, stamped received on March 18, 2004, Johnson acknowledged the 90 day limitation to file suit.  Johnson's Undated Letter, Stamped Received January 13, 2005, Ex. D.

On June 14, 2003, Johnson was injured on the job.  On August 29, 2003, Johnson provided a Report of Workability from his physician indicating that he could return to work without limitation.  Jerstad Aff., Ex. F.

On November 25, 2003, Johnson filed a second charge of discrimination against Good Samaritan with the EEOC based on race and disability discrimination and retaliation for filing a workers' compensation claim for a work-related injury that occurred on June 14, 2003 ("Second Good Samaritan Charge").  Jerstad Aff. Ex. D.  On February 6, 2004, the EEOC dismissed Johnson's Second Good Samaritan Charge and issued a Dismissal and Notice of Suit Rights, informing Johnson that he had 90 days from receipt of the Notice to file a lawsuit based on the charge.

In September 2004, Johnson entered into two separate settlement agreements with Good Samaritan.  First, on September 23, 2004, Johnson signed and his attorney, Kenya Bodden, notarized a settlement agreement, which released all claims against Good Samaritan.  See Johnson's Undated Letter to Judge Donovan Frank, Stamped

Received November 15, 2004, Exhibit Entitled "Settlement Agreement and Release," dated September 23, 2004, at 1-5.  In this Settlement Agreement and Release, Johnson agreed to release all claims against Good Samaritan arising out of his employment with Good Samaritan, including, but not limited to, claims for violation of the MHRA, Title VII, the Americans with Disabilities Act.  Id. at 1-2.

On September 24, 2004, Johnson and his attorney, Kenya Bodden, signed the second settlement agreement, which released Johnson's workers' compensation claims.  Johnson's Undated Letter to Court, Stamped Received on December 7, 2004, Exhibit Entitled "Stipulation for Settlement."

On October 29, 2004, Johnson served this action against Good Samaritan, alleging that Good Samaritan discriminated against him based on race and disability, and had retaliated against him for filing a workers' compensation claim for a work-related injury that occurred on June 14, 2003.  On November 1, 2004, Johnson served this action against AFSCME, alleging that AFSCME violated Title VII by discriminating against him on the basis of disability and by aiding and abetting in such discrimination.

In undated letters to the Court, stamped received on November 15, 2004 and January 13, 2005, Johnson acknowledged signing a settlement agreement for claims against Good Samaritan arising out of his workers' compensation claim, but disputed that he signed a settlement agreement in which he agreed not to pursue other claims and asked the Court to void any signature on a settlement agreement for other claims due to him being on medication.  Johnson's Undated Letter to Court, Stamped Received November 15, 2004 ("Judge, we had the 6/14/03 job injury case resolved, the other side tried to have me sign papers stating I quit my job, plus papers stating I will not file a

5

discrimination case, to my knowledge I didn't, plus my attorney turned this case down, if papers was signed, I am requesting that my signature be voided."); Johnson's Undated Letter, Stamped Received January 13, 2005 ("[A]lso on Sep. 23, 04 I did sign a settlement statement for 6/14/03 for that case only, no cases arising out of this case, if I did sign for other cases, was on medication please void.").

On November 22, 2004, AFSCME brought a motion to dismiss Johnson's Complaint arguing that it was barred by the statute of limitations, that its disability claim failed to assert a legally cognizable claim for relief under Title VII, and that the Complaint failed for insufficiency of service of process.  On December 27, 2004, Good Samaritan moved to dismiss or in the alternative, for summary judgment, on grounds that Johnson's Complaint was barred by the statute of limitations and by the doctrines of waiver and release, and because it failed to state a claim upon which relief could be granted.

## STANDARD OF REVIEW

### A. Motion to Dismiss

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts must view the complaint in the light most favorable to the non-moving party and may dismiss the complaint only if no relief can be granted under any set of facts that could be proven consistently with the complaint's allegations.  <u>Alexander v. Peffer</u>, 993 F.2d 1348, 1349 (8th Cir. 1993) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).  However, "the court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences.  Moreover, in treating the factual allegations of a complaint as true, the court does not, however, blindly accept the legal

6

conclusions drawn by the pleader from the facts." Helleloid v. Indep. Sch. Dist. Number 361, 149 F.Supp.2d 863, 867 (D. Minn. 2001).  To avoid dismissal under Rule 12(b)(6), the "complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claims." DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002).

### B.   Summary Judgment

In this case, to the extent that Good Samaritan or AFSCME relies on information outside of the pleadings, items not in the public record or documents not referenced by Johnson in his Complaint, Good Samaritan's and AFSCME's motions will be treated as motions for summary judgment.  See Fed. R. Civ. P. 12(b);[3] Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999)("When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it  may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'")(citations omitted).

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d

---

[3]   Rule 12(b) provides in this regard: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

7

1217, 1219 (8th Cir. 1999). "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, at *4-5 (D. Minn. 2003) (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

**DISCUSSION**

Both AFSCME and Good Samaritan have moved to dismiss Johnson's respective Complaints against them on grounds that the actions are barred by the statute of limitations. Based on the analysis below, this Court agrees that both suits are barred by the statute of limitations and should be dismissed.

### A.     AFSCME

On December 3, 2003, Johnson filed a Charge of Discrimination against the AFSCME with the MHRD and on December 8, 2003, he filed a Charge of Discrimination with the EEOC. Duchscherer Aff., Exs. F, G. On February 6, 2004, the EEOC dismissed Johnson's AFSCME Charge and on April 29, 2004, the MHRD adopted the EEOC's findings and issued a Notice of Dismissal. Duchscherer Aff., Exs. H, I. On November 1, 2004, Johnson served this action against AFSCME, alleging that AFSCME violated Title VII by discriminating against him on the basis of disability and aiding and abetting in such discrimination.

Whether Johnson was suing AFSCME based on the ADA or Title VII, based on the applicable statute of limitations, Johnson had 90 days from the receipt of the EEOC's Dismissal and Notice of Rights to Plaintiff to file suit. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(1). As the Dismissal and Notice of Rights was mailed to Johnson on February 6, 2004, Johnson had approximately 90 days from this day (depending on when he received the Notice) to file his suit against AFSCME. Johnson, however, did not file this suit until November 1, 2004, which was months after the statute of limitations had run on any federal discrimination or disability claim under Title VII or the ADA. Accordingly, this Court recommends that this claim be dismissed with prejudice.

Further, based on the MHRA's statute of limitations, Johnson had 45 days from the receipt of the MDHR's Notice of Dismissal on April 29, 2004 to file suit. See Minn. Stat. § 363A.33, Subd. 1.[4]  Johnson, however, did not file this suit until November 1, 2004, long after the statute of limitations had run.  Accordingly, this Court recommends that his state claim be dismissed with prejudice.

For all of these reasons, this Court recommends that Johnson's suit against AFSCME be dismissed with prejudice.[5]

**B.    Good Samaritan**

On January 27, 2003, Johnson filed his first Charge of Discrimination against Good Samaritan with the MHRD and the EEOC claiming racial discrimination.  On April 3, 2003, the MDHR dismissed the First Good Samaritan Charge and issued a right-to-sue notice informing Johnson that he had 45 days to bring a civil action based on the

---

[4]  Under the MHRA, Johnson had one year after the occurrence of the allegedly discriminatory practice to commence a suit against AFSCME or to file a charge of discrimination with the MHRD.  See Minn. Stat. § 363A.29, Subd. 3.  This he did. However, once the MHRD issued its decision on his charge, he had 45 days from receipt of the decision to commence this suit.  This he did not do.  However, even if he had not filed a charge with the MHRD, but had simply filed his suit, his suit still would have been untimely as it was not filed within one year after the AFSCME refused to grieve his termination.

[5]  AFSCME also argued that Johnson's claims should be dismissed because Johnson failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  Specifically, AFSCME argued that his should be dismissed because Johnson had cited to Title VII as the statute that had been violated, but had set forth facts to support an ADA claim, and Johnson had failed to serve his Complaint against AFSCME with a Summons as required under Rule 4(c) of the Federal Rule of Civil Procedure. While these deficiencies may provide a basis for granting AFSCME's motions, the Court finds that these grounds are curable—i.e. had this Court not found that Johnson's claims were barred by the statute of limitations, the Court would have given Johnson an opportunity to cure his alleged failure to serve a Summons with the Complaint, and to re-plead the disability claim under the ADA.

10

charge or that right would be foreclosed; on June 3, 2003, the EEOC dismissed this charge and notified Johnson that he had 90 days to file a lawsuit based on the charge.

On November 25, 2003, Johnson filed his second charge of discrimination against Good Samaritan with the EEOC. Jerstad Aff., Ex. D. On February 6, 2004, the EEOC dismissed this charge and informed Johnson that he had 90 days from receipt of the Dismissal and Notice of Suit Rights to file a lawsuit based on the charge. On October 29, 2004, Johnson served this action against Good Samaritan, alleging that Good Samaritan discriminated against him based on race and disability, and had retaliated against him for filing a workers' compensation claim for a work-related injury that occurred on June 14, 2003.

Based on the statute of limitations, Johnson had 45 days (plus five days) from April 3, 2003 to pursue a claim under the MHRA, and 90 days from the receipt of the June 3, 2003 letter to assert a claim under Title VII, to commence a suit against Good Samaritan based on his First Good Samaritan Charge. Similarly, Johnson had 90 days from the receipt of the February 6, 2004 letter to file a lawsuit against Good Samaritan based on his second charge of discrimination under Title VII and the ADA. Johnson filed this suit against Good Samaritan on October 29, 2004, months after the statute of limitations had run on either his first or second charge. Therefore, based on his untimely filing of the Complaint against Good Samaritan, this Court recommends that it be dismissed with prejudice.[6]

---

[6] In addition to arguing that Johnson's suit against Good Samaritan was barred based on the statute of limitations, Good Samaritan also asserted that the suit was precluded by the express terms of the September 23, 2004, Settlement Agreement and Release between Johnson and Good Samaritan. On September 23, 2004, Johnson signed a Settlement Agreement and Release, which released Johnson's claims against

Good Samaritan "whether known or unknown, arising from [Johnson's] employment with [Good Samaritan] including, but not limited to, claims for violation of the Minnesota Human Rights Act (MHRA); . . . violation of the Americans with Disabilities Act (ADA); violation of Title VII, violation of any other federal, state, or local laws, including civil rights laws based on any protected class status . . . ." Johnson's Undated Letter to Judge Donovan Frank, Stamped Received November 15, 2004, Exhibit Entitled "Settlement Agreement and Release" dated September 23, 2004, at 1-2. This agreement was notarized by his workers compensation attorney, Kenya Bodden.

"Public policy favors the enforcement of voluntary settlement agreements containing release language that is unambiguous." Joe v. First Bank Sys., Inc., 202 F.3d 1067, 1070 (8th Cir.2000) (citing Ulvin v. Northwestern Nat. Life Ins. Co., 943 F.2d 862, 867 (8th Cir.1991) (enforcing release of ADEA claim in consideration of severance payment); Leavitt v. Northwestern Bell Tel. Co., 921 F.2d 160, 162-63 (8th Cir.1990) (enforcing release of ERISA claims though employee did not consult attorney); Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 541 (8th Cir. 1987) (release of ADEA claim upheld when employee received severance payment though no attorney consulted)). "Because a release is a contract, the Eighth Circuit Court of Appeals applies 'ordinary contract principles' to the question of the validity of a release." E.E.O.C. v. American Home Products Corp., 144 F.Supp.2d 1084, 1091 (N.D. Iowa 2001). "[U]nder 'ordinary principles of contract law,' the validity of a release depends upon whether it was 'voluntary and knowing.'" Id. (quoting Ulvin v. Northwestern Nat'l Life Ins. Co., 943 F.2d 862, 866-87 (8th Cir.1991)).

The elements a court considers to determine whether a person has entered into a voluntary and knowing release are as follows:

> (1) [the plaintiff's] education and business experience; (2) [the plaintiff's] input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time [the plaintiff] had for deliberation before signing the release; (5) whether [the plaintiff] read the release and considered its terms before signing it; (6) whether [the plaintiff] knew of his rights under the plan and the relevant facts when he signed the release; (7) whether [the plaintiff] was given an opportunity to consult with an attorney before signing the release; (8) whether [the plaintiff] received adequate consideration for the release; and (9) whether [the plaintiff's] release was induced by improper conduct on [the fiduciary's] part.

Id. (citations omitted).

## **RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Defendant AFSCME Council No. 14's Motion to Dismiss Complaint [Docket No. 10] be **GRANTED**.

2. Defendant University Good Samaritan Center's Motion to Dismiss or, in the Alternative, for Summary Judgment [Docket No. 18] be **GRANTED**.

---

It is true that the Settlement Agreement and Release expressly released the claims alleged in the instant suit. It is also true that the document states:

> [Johnson] has carefully read this Release consisting of five (5) pages and understands all of its terms. [Johnson] has had an opportunity to fully discuss this Release with an attorney. [Johnson] has fully negotiated this Release with [Good Samaritan]. In agreeing to sign this Release, [Johnson] has not relied on any statements or explanations made by [Good Samaritan], it representatives, agents, or attorneys.

However, Johnson has argued that the Settlement Agreement and Release should be declared void because he was on medication when he signed the agreement. In addition, in his undated letters to the Court, received on November 15, 2004, and January 13, 2005, Johnson suggested that he did not understand that he was giving up his right to file a discrimination case against Good Samaritan. See Johnson's Undated Letter to Court, Stamped Received November 15, 2004 ("Judge, we had the 6/14/03 job injury case resolved, the other side tried to have me sign papers stating I quit my job, plus papers stating I will not file a discrimination case, to my knowledge I didn't, plus my attorney turned this case down, if papers was signed, I am requesting that my signature be voided."); Johnson's Undated Letter to Court, Stamped Received January 13, 2005 ("[A]lso on Sep. 23, 04 I did sign a settlement statement for 6/14/03 for that case only, no cases arising out of this case, if I did sign for other cases, was on medication please void.").

Based on this record, and the elements required to establish a knowing and voluntary waiver, this Court cannot conclude as a matter of law that Johnson released the claims asserted against Good Samaritan in this suit.

13

Johnson R&R.doc

3. Plaintiff's Motion, and Motion to Dismiss [Docket No. 30] be **DENIED**.

4. Plaintiff's Complaint should be **DISMISSED WITH PREJUDICE**.


Dated: June 21, 2005

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **July 11, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.